UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON
CIVIL ACTION NO. 6:19-CV-00038-GFVT

*Electronically Filed*

APPALACHIAN REGIONAL HEALTHCARE, INC.                               PLAINTIFF

V.          **MOTION TO DISMISS ON BEHALF OF
            DEFENDANT, RICHIE PHARMACAL CO.**

PURDUE PHARMA L.P., et al.                                          DEFENDANTS

    Defendant, Richie Pharmacal Co., by counsel, moves the Court, pursuant to Fed. R. Civ. P. 12(b)(6) and all other applicable rules, to dismiss the Plaintiff's claims against it with prejudice, for failure to state a claim upon which relief may be granted. A memorandum in support of this motion is set forth below.

**MEMORANDUM**

    In a 249-page complaint, Plaintiff Appalachian Regional Healthcare, Inc., alleges that various manufacturers, marketers, and distributors of opioids—thirty-two defendants in total—are responsible for the opioid crisis in Kentucky and have caused Plaintiff to incur substantial expense in treating individuals with opioid-related medical conditions. One of those defendants, Richie Pharmacal Co., is a Glasgow, Kentucky-based pharmaceutical distributor. Plaintiff's Complaint contains no factual allegations of wrongdoing on Richie's part whatsoever. The Complaint does not even allege that Richie distributed prescription opioids. Instead, Plaintiff groups Richie with other "Distributor Defendants" and claims that, as a group, these defendants have engaged in wrongful conduct. Such conclusory, general allegations are insufficient to state any claim against Richie under Federal Rule of

Civil Procedure 8. Accordingly, Richie respectfully asks this Court to DISMISS Plaintiff's claims.

## FACTUAL BACKGROUND

A detailed summary of Plaintiff's complaint is unnecessary because so few of its allegations relate to Richie. Generally speaking, Plaintiff alleges that the defendants conspired together to falsely market and distribute prescription opioids, with the goal of increasing demand and sales. [See Complaint at 5 ¶17.] This suit is one of hundreds like it across the nation, including dozens that have originated in this District.

Remarkably, of the 919 paragraphs contained in Plaintiff's complaint, only five mention Richie. The sum of Plaintiff's allegations against Richie are reproduced below:

> 157. Upon information and belief, Defendant Richie Pharmacal Co. ("Richie") is incorporated in Kentucky with a principal place of business in Glasgow, Kentucky.
>
> 158. Richie is a pharmaceutical distributor licensed to do business in Kentucky.
>
> 159. Richie does substantial business in the Commonwealth of Kentucky.
>
> 160. Richie distributes pharmaceuticals to retail pharmacies and institutional providers to customers in all 50 states, including Kentucky.
>
> 161. Cardinal, Anda, H.D. Smith, Henry Schein, Richie and AmerisourceBergen are collectively referred to as the "Distributor Defendants."

[Id. at 38-39.]

Plaintiff's Complaint contains no other allegations specific to Richie. Rather, Plaintiff includes Richie in a group of so-called "Distributor Defendants." Plaintiff alleges the Distributor Defendants "have distributed, supplied, sold, and placed into the stream of commerce prescription opioids, without fulfilling the fundamental duty of wholesale drug distributors to detect and warn of diversion of dangerous drugs for non-medical purposes."

[Id. at 36 ¶145.] Importantly, the Complaint alleges that four of the five other Distributor Defendants (AmerisourceBergen, Anda, Cardinal, and H. D. Smith) actually engaged in the distribution of prescription opioids. [Id. at 36 ¶146; 37 ¶¶149, 151, 152.] The Complaint contains no such allegation with respect to Richie. Plaintiff's Complaint fails to allege any wrongdoing on Richie's part and improperly groups Richie together with other Defendants against whom factual allegations are actually made. Richie is therefore entitled to dismissal.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "However, to survive a motion to dismiss, the complaint 'must contain either direct or inferential allegations' establishing each material element required for recovery under some actionable theory.'" Seum v. Osborne, ___ F. Supp. 3d ___, 2018 WL 4691332, at * 6 (E.D. Ky. 2018) (quoting Bishop v. Lucent Tech., Inc., 520 F.3d 516, 519 (6th Cir. 2008)). A defendant may move under Rule 12(b)(6) to dismiss a complaint which fails to state a claim upon which relief may be granted. See id.

This Court is well-acquainted with the legal standard for a motion to dismiss. "When reviewing a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff." Id. (quoting DirecTV v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007)) (cleaned up). The plaintiff's complaint, however, "must contain sufficient *factual* matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (emphasis added). Courts "need not accept as true legal conclusions or unwarranted factual inferences." DirecTV, Inc., 487 F.3d at 476 (citation omitted). As this

Court recently stated, "the facts that are plead must rise to the level of plausibility, not just possibility – 'facts that are merely consistent with a defendant's liability stop short of the line between possibility and plausibility.'" Seum, 2018 WL 4691332, at *6 (quoting Iqbal, 556 U.S. at 678) (cleaned up). Thus, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must "provide . . . more than labels and conclusions." Twombly, 550 U.S. at 555.

## ARGUMENT

The allegations against Richie contained in Plaintiff's Complaint fall far short of all federal pleading standards. True enough, the Complaint alleges at length what the "Distributor Defendants" did to further the opioid crisis. But that is simply not enough to state a claim against Richie. Plaintiff's Complaint contains no factual allegations whatsoever regarding any actions or inactions Richie may have undertaken with respect to the distribution of prescription opioids. In fact, Plaintiff does not even allege that Richie distributed opioid pharmaceuticals. Plaintiff has failed to state any claim against Richie; accordingly, this Court should dismiss Richie as a defendant in this action.

Essentially, Plaintiff seeks to satisfy the federal pleading standard by grouping Richie together with other culpable defendants and alleging that, as a group, they engaged in wrongdoing. This method of pleading falls fall short of affording Richie "fair notice of what the plaintiff's claim is and the ground upon which it rests." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) (citation omitted). Courts routinely hold that, in the absence of factual allegations against individual defendants, the grouping together of defendants is insufficient to satisfy Rule 8. For instance, in Pierson v. Orlando Regional Healthcare Systems, Inc., 619 F. Supp. 2d 1260, 1267 (M.D. Fla. 2009), a physician brought suit against twenty-six defendants after his privileges were suspended at a particular hospital. The

plaintiff grouped the individual defendants and two physician groups together as "the Peer Review Defendants," alleging that the peer review he received by his fellow doctors at the hospital was a sham. Id. at 1266, 1270. The plaintiff used the phrase "Peer Review Defendants" throughout his 73-page, 325-paragraph complaint, mentioning some individual defendants only two or three times. Id. at 1266, 1272. The court observed that throughout the factual description of the peer review process, "the reader is left to wonder about the identities of the parties involved." Id. at 1273. Ultimately, the court held that, "[b]ecause of the grouping together of these Defendants without differentiation or some sort of description of actions that could provide 'fair notice' of the basis for the claims against them, the claims against the 'Peer Review Defendants' are not sufficiently pled." Id. at 1274.

Similarly, this Court recently dismissed a complaint that similarly failed to make any specific allegations towards individual defendants. In Red Hed Oil, Inc. v. H.T. Hackney Co., 292 F. Supp. 3d 764, 769 (E.D. Ky. 2017), the plaintiffs claimed the fire that destroyed their convenience store was caused by defective, expired e-cigarettes held in storage. The plaintiffs brought suit against six e-cigarette manufacturers and the distributor. Id. Their complaint, however, did not contain any factual allegations regarding which of the six manufacturers' products caused the blaze. Instead, the plaintiffs merely alleged that each of the defendants manufactured e-cigarettes that were stored inside the room where the fire began, and that the fire was caused by a defect or the improper design of the products. Id. at 774. This Court granted the manufacturer defendants' motion to dismiss, holding that the plaintiff's allegations "do not give rise to a reasonable inference that the manufacturing defendants caused Plaintiffs' harm." Id. (citing Iqbal, 556 U.S. at 678). The Court observed that "[t]he plaintiffs do not tell us which manufacturer produced the defective e-cigarettes that caused the inferno. They do not tell us how the fire started, other than to generally

state that e-cigarettes cause fires. . . . Inserting Defendants' names into formulaic cause of action language does not satisfy federal pleading standards." Id.

These cases are not outliers. Federal district courts correctly recognize that when a complaint "lumps Defendants together as a group and asserts general common factual allegations against all of them . . . it is impossible to untangle Plaintiffs' specific theory of liability against each individual Defendant." Sheeran v. Blyth Shipholding S.A., No. 14-5482, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015). Such is the case here. By including Richie in the group of "Distributor Defendants," and alleging that the group engaged in wrongdoing in the distribution of opioids, Plaintiff has rendered Richie unable to discern the factual basis of the claims against it. This is all the more true in light of Plaintiff's failure to allege that Richie ever distributed prescription opioids.

Plaintiff's failure to make out any claims against Richie is evident when comparing the allegations levied against Richie to those against the other "Distributor Defendants." As outlined above, Plaintiff's Complaint merely states Richie is a pharmaceutical distributor located in Glasgow, Kentucky. In contrast, the Complaint details at length the alleged wrongdoing of Cardinal, another distributor:

> 648. To date, Cardinal has paid a total of $98 million in fines and other amounts involving multiple DEA and various state actions relating to its improper management in distribution of opioids to pharmacies across the United States.
>
> 649. In 2008, Cardinal paid a $34 million penalty to settle allegations about opioid diversion taking place at seven warehouses around the United States (the "2008 Cardinal Settlement Agreement"). These allegations included failing to report to the DEA thousands of suspicious orders of hydrocodone that Cardinal then distributed to pharmacies that filled illegitimate prescriptions originating from rogue Internet pharmacy websites.
>
> 650. In connection with the 2008 Cardinal Settlement Agreement, the DEA stated that "[d]espite [its] repeated attempts to educate Cardinal on diversion awareness and prevention, Cardinal engaged in a pattern of failing to report blatantly suspicious orders for controlled substances filled by its distribution

facilities located throughout the United States." The DEA concluded that "Cardinal's conduct allowed the 'diversion' of millions of dosage units of hydrocodone from legitimate to non-legitimate channels."

651. As part of the 2009 Cardinal Settlement Agreement, Cardinal agreed to "maintain a compliance program designed to detect and prevent diversion of controlled substances as required by the CSA and applicable DEA regulations." However, in 2012, the DEA issued an "immediate suspension order," suspending Cardinal's registration with respect to Cardinal's drug distribution facility in Lakeland, Florida. That order stated that "Despite the [2008 Cardinal Settlement Agreement], the specific guidance provided to Cardinal by DEA, and despite the public information readily available regarding the oxycodone epidemic in Florida, Cardinal has failed to maintain effective controls against diversion of controlled substances into other than legitimate medical, scientific, and industrial channels, in violation of [the CSA]." For example, from "2008-2009, Cardinal's sales to its top four retail pharmacies [in the State of Florida] increased approximately 803%. From 2008 to 2010, Cardinal's sales to its top four retail pharmacies [in the State of Florida] increased 162%."

652. In 2012, Cardinal reached another settlement with the DEA relating to its failure to "conduct meaningful due diligence to ensure that the controlled substances were not diverted into other than legitimate channels" resulting in systemic opioid diversion in its Florida distribution center (the "2012 Cardinal Settlement Agreement"). Cardinal's Florida center received a two-year license suspension for supplying more than 12 million dosage units to only four area pharmacies, nearly fifty times as much oxycodone as it shipped to the rest of Florida and an increase of 241% in only two years. The DEA found that Cardinal's own investigator warned Cardinal against selling opioids to these pharmacies, but that Cardinal did nothing to notify the DEA or cut off the supply of drugs to the suspect pharmacies. Instead, Cardinal's opioid shipments to the pharmacies increased.

653. In the 2012 Cardinal Settlement Agreement, Cardinal agreed that it had (i) failed to maintain effective controls against the diversion of controlled substances, including failing to conduct meaningful due diligence to ensure that controlled substances were not diverted; (ii) failed to detect and report suspicious orders of controlled substances as required by the CSA, on or before May 14, 2012; and (iii) failed to adhere to the provisions of the 2008 Cardinal Settlement Agreement.

654. In December 2016, Cardinal again settled charges that it had violated the CSA by failing to prevent diversion of oxycodone for illegal purposes, this time for $44 million (the "2016 Cardinal Settlement Agreement"). The settlement covered DEA allegations that Cardinal had failed to report suspicious orders across Washington, Maryland, New York, and Florida. The same Florida distribution center at the heart of the 2012 settlement was again implicated in this case. The settlement also covered a Cardinal subsidiary,

>Kinray, LLC, which failed to report a single suspicious order despite shipping oxycodone and hydrocodone to more than 20 New York-area pharmacy locations that placed unusually high orders of controlled substances at an unusually frequent rate.

[Complaint at 187-90 (footnotes omitted).] The Complaint contains similar allegations against distributor AmerisourceBergen. [Id. at 190 ¶¶655-57.]

Clearly, Plaintiff has information at its disposal to make factual allegations against possibly culpable parties. Its failure to make any allegations whatsoever against Richie, then, suggests that Plaintiff has no factual basis for including Richie in its Complaint. Rather, Richie, like the other Kentucky defendants in this suit, has been fraudulently joined in an attempt to avoid removal. This argument was recently made by Defendant Actavis Pharma, Inc., in its notice of removal, and Richie adopts it in full. [See Notice of Removal at 12-13 ¶¶46-53.] As Actavis Pharma correctly notes, this Court held in Salisbury v. Purdue Pharma, L.P., 166 F. Supp. 2d 546, 549 (E.D. Ky. 2001), an earlier opioid lawsuit, that certain pharmacy defendants were fraudulently joined to defeat removal when the plaintiffs' complaint "omi[tted] . . . any averment to the effect that defendant pharmacies sold or supplied OxyContin *to plaintiffs*. Absent such an allegation, of course, plaintiffs' complaint does not link plaintiffs' alleged injuries with the action (or inaction) of defendant pharmacies." Here, Plaintiff's complaint is even more threadbare than the complaint found lacking in Salisbury. The complaint does not merely fail to state that Richie distributed opioids that harmed Plaintiff; it fails to state that Richie distributed opioids at all. If the pharmacy defendants in Salisbury were fraudulently joined to defeat removal, the same must be true for Richie in this case.

As with the other opioid suits in which it is a defendant, Plaintiff included Richie in this lawsuit merely as a futile attempt to avoid federal jurisdiction. Richie should not be put through the time and expense of defending itself in the years-long MDL process when the

Plaintiff's complaint is wholly bereft of any factual allegations against Richie whatsoever. This Court possesses the power to decide Richie's motion to dismiss at any time prior to the point when the "[Judicial Panel on Multidistrict Litigation's] order of transfer under [28 U.S.C. § 1407] is filed with the clerk of the transferee court." 15 Fed. Prac. & Proc. Juris. § 3866.1 (4th ed. 2018). Here, where Plaintiff's complaint contains no basis for liability against Richie, it is entirely appropriate to grant Richie's motion to dismiss at this early stage of the case.

## **CONCLUSION**

For the foregoing reasons, Richie Pharmacal, Co. respectfully asks this Court to DISMISS Plaintiff Appalachian Regional Healthcare, Inc.'s claims against Richie WITH PREJUDICE. The entry of a consistent order is respectfully prayed.

KERRICK BACHERT, PSC
1025 State Street
Bowling Green, KY 42101
(270) 782-8160
tkerrick@kerricklaw.com
mcook@kerricklaw.com
cgivens@kerricklaw.com

*/s/ Matthew P. Cook*
Thomas N. Kerrick
Matthew P. Cook
Colton W. Givens
*Counsel for Richie Pharmacal Co.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of February, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic notification of such filing to all counsel of record in this action:

| | |
|---|---|
| Jessica A. Burke<br>BURKE LAW GROUP<br>Post Office Box 1510<br>Whitley City, Kentucky 42653<br>jessica@jblawoffices.net<br>*Counsel for Plaintiff* | R. Eric Mills<br>MILLS LAW GROUP<br>Post Office Box 2057<br>Inez, Kentucky 41225<br>*Counsel for Plaintiff* |
| John W. Barrett*<br>Sterling Starns*<br>David McMullan, Jr.*<br>Richard Barrett*<br>BARRETT LAW GROUP, P.A.<br>Post Office Box 927<br>404 Court Square North<br>Lexington, Mississippi 39095<br>dbarrett@barrettlawgroup.com<br>sstarns@barrettlawgroup.com<br>dmcmullan@barrettlawgroup.com<br>rrb@rrblawfirm.net<br>*Counsel for Plaintiff* | Mark S. Cheffo<br>Hayden A. Coleman<br>DECHERT LLP<br>Three Bryan Park<br>1095 Avenue of the Americas<br>New York, New York 10036<br>Mark.Cheffo@dechert.com<br>Hayden.Coleman@dechert.com<br>*Counsel for Purdue Pharma L.P., Purdue Pharma Inc.; and The Purdue Frederick Company Inc.* |
| Korey A. Nelson<br>Lydia A. Wright<br>Rick Yelton<br>BURNS CHAREST, LLP<br>365 Canal Street, Suite 1170<br>New Orleans, Louisiana 70130<br>knelson@burnscharest.com<br>lwright@burnscharest.com<br>ryelton@burnscharest.com<br>*Counsel for Plaintiff* | John A. McCauley<br>James K. O'Connor<br>Michael MacWilliams<br>VENABLE LLP<br>750 East Pratt Street, Suite 900<br>Baltimore, Maryland 21202<br>JMCcauley@venable.com<br>JKOConnor@venable.com<br>Mbmacwilliams@venable.com<br>*Counsel for Abbott Laboratories and Abbott Laboratories Inc.* |
| Gregory A. Napier<br>TROUTMAN & NAPIER, PLLC<br>Firebrook Mansion<br>4740 Firebrook Boulevard<br>Lexington, Kentucky 40513<br>gnapier@troutmannapier.com | Warren Burns<br>BURNS CHAREST, LLP<br>900 Jackson Street, Suite 500<br>Dallas, Texas 75202<br>wburns@burnscharest.com<br>*Counsel for Plaintiff* |

| | |
|---|---|
| Jonathan W. Cuneo<br>Monical Miller<br>David Black<br>Evelyn Li<br>CUNEO GILBERT & LADUCA LLP<br>4725 Wisconsin Avenue, NW, Suite 200<br>Washington, DC 20016<br>jonc@cuneolaw.com<br>monicam@cuneolaw.com<br>dblack@cuneolaw.com<br>evelyn@cuneolaw.com<br>*Counsel for Plaintiff* | Steve Martino<br>TAYLOR MARTINO, P.C.<br>51 St. Joseph Street<br>Mobile, Alabama 36602<br>stevemartino@taylormartino.com<br>*Counsel for Plaintiff* |
| Christopher M. Mussler<br>GWIN, STEINMETZ & BAIRD, PLLC<br>401 West Main Street, Suite 1000<br>Louisville, Kentucky 40202<br>cmussler@gsblegal.com<br>*Counsel for Insys Therapeutics, Inc.* | J. Matthew Donohue<br>Joseph L. Franco<br>HOLLAND & KNIGHT, LLP<br>2300 U.S. Bancorp Tower<br>111 S.W. Fifth Avenue<br>Portland, Oregon 97204<br>Matt.donohue@hklaw.com<br>Joe.franco@hklaw.com<br>*Counsel for INSYS Therapeutics, Inc.* |
| Brien T. O'Connor<br>Andrew T. O'Connor<br>ROPES & GRAY LLP<br>800 Boylston Street<br>Boston, Massachusetts 02199<br>Brien.oconnor@ropesgray.com<br>Andrew.oconnor@ropesgray.com<br>*Counsel for Mallinckrodt LLC and SpecGX LLC* | Steven B. Loy<br>Perry M. Bently<br>Monica H. Braun<br>STOLL KENNON OGDEN PLLC<br>300 West Vine Street, Suite 2100<br>Lexington, Kentucky 40507<br>Steven.loy@skofirm.com<br>Perry.bently@skofirm.com<br>Monica.braun@skofirm.com<br>*Counsel for Cardinal Health, Inc.* |
| Jeffrey F. Peck<br>Thomas G. McIntosh<br>ULMER & BERNE LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, Ohio 45202<br>jpeck@ulmer.com<br>tmcintosh@ulmer.com<br>*Counsel for Amneal Pharmaceuticals, LLC* | John P. McDonald<br>C. Scott Jones<br>Brandan J. Montminy<br>LOCKE LORD LLP<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201<br>jpmcdonald@lockelord.com<br>sjones@lockelord.com<br>Brandan.montminy@lockelord.com<br>*Counsel for Henry Schien, Inc.* |

| | |
|---|---|
| Robert C. Stilz, III<br>KINKHEAD & STILZ<br>PNC Tower<br>301 East Main Street, Suite 800<br>Lexington, Kentucky 40507<br>cstilz@ksattorneys.com<br>*Counsel for Henry Schien, Inc.* | Scott Powers<br>BAKER BOTTS LLP<br>98 San Jacinto Boulevard, Suite 1500<br>Austin, Texas 78701<br>Scott.poweres@bakerbotts.com<br>*Counsel for Depomed Inc. n/k/a Assertio Therapeutics, Inc.* |
| Steve A. Reed<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, PA 19103-2921<br>Steven.reed@morganlewis.com<br>*Counsel for Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* | Daniel E. Murner<br>Elizabeth J. Winchell<br>LANDRUM & SHOUSE LLP<br>106 West Vine Street, Suite 800<br>Lexington, Kentucky 40507<br>dmurner@landrumshouse.com<br>ewinchell@landrumshouse.com<br>*Counsel for AmerisourceBergen Drug Corporation* |
| Charles C. Lifland<br>O'MELVENY & MYERS LLP<br>400 South Hope Street<br>Los Angelos, California 90071<br>clifland@omm.com<br>*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals. Inc.* | Donna Welch<br>Martin L. Roth<br>Timothy Knapp<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Donna.welch@kirkland.com<br>Martin.roth@kirkland.com<br>Timothy.knapp@kirkland.com<br>*Counsel for Allergan plc f/k/a Actavis plcand Allergan Finance LLC f/k/a Acativs, Inc. f/k/a Watson Pharmaceuticals. Inc.* |
| Jennifer G. Levy<br>KIRKLAND & ELLIS LLP<br>655 Fifteenth Street, NW<br>Washington, DC 20005<br>Jennifer.levy@kirkland.com<br>*Counsel for Allergan plc f/k/a Actavis plc and Allergan Finance LLC f/k/a Acativs, Inc. f/k/a Watson Pharmaceuticals. Inc.* | Daniel G. Jarcho<br>ALSTON & BIRD LLP<br>950 F Street NW<br>Washington, DC 20004<br>daniel.jarcho@alston.com<br>*Counsel for Noramco, Inc.* |
| Cari K. Dawson<br>Jenny A. Hergenrother<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street NW<br>Atlanta, GA 30309<br>Cari.dawson@alston.com<br>Jenny.hergenrother@alston.com<br>*Counsel for Noramco, Inc.* | Kevin M. Sadler<br>BAKER BOTTS LLP<br>1001 Page Mill Road<br>Building One, Suite 200<br>Palo Alto, CA 94304-1007<br>Kevin.sadler@bakerbotts.com<br>*Counsel for Depomed Inc. n/k/a Assertio Therapeutics, Inc.* |

| | |
|---|---|
| John D. Lombardo<br>ARNOLD & PORTER KAYE SCHOLER LLP<br>777 S. Figueroa St., 44th Floor<br>Los Angeles, CA 90017<br>John.lombardo@arnoldporter.com<br>*Counsel for Endo Pharmaceuticals Inc. and Endo Health Solutions, Inc.* | Robert A. Nicholas<br>Shannon E. McClure<br>REED SMITH LLP<br>1717 Arch Street, Suite 3100<br>Philadelphia, PA 19103<br>rnicholas@reedsmith.com<br>smcclure@reedsmith.com<br>*Counsel for Amerisourcebergen Drug Corporation* |
| James W. Matthews<br>Katy E. Koski<br>Ana Francisco<br>FOLEY & LARDNER LLP<br>111 Huntington Avenue<br>Boston, MA 02199<br>jmatthews@foley.com<br>kkoski@foley.com<br>afrancisco@foley.com<br>*Counsel for Anda, Inc.* | Lauren M. Fincher<br>LOCKE LORD LLP<br>600 Congress Avenue, Suite 2200<br>Austin, TX 78701-3055<br>lfincher@lockelord.com<br>*Counsel for Henry Schein, Inc.* |
| W. Kennedy Simpson<br>THOMPSON MILLER & SIMPSON PLC<br>743 West Main Street, Suite 400<br>Louisville, KY 40202<br>ksimpson@tmslawplc.com<br>*Counsel for H.D. Smith, LLC, f/k/a H.D. Smith Wholesale Drug Co.* | Ace Clinique of Medicine LLC<br>c/o James A. Chaney, M.D.<br>181 Roy Campbell Dr.<br>Hazard, KY 41701 |
| M. Trent Spurlock<br>Anne Guillory<br>DINSMORE & SHOHL LLP<br>101 S. Fifth St., Ste. 2500<br>Louisville, KY 40202<br>trent.spurlock@dinsmore.com<br>anne.guillory@dinsmore.com<br>*Counsel for Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* | The Recovery Center, LLC<br>c/o Robert Jack Duncan<br>1550 Hwy 15 S., Ste. 200<br>Jackson, KY 41339 |
| Wendy West Feinstein<br>MORGAN, LEWIS & BOCKIUS LLP<br>One Oxford Center, 32nd Floor<br>Pittsburgh, PA 15219-6401<br>Wendy.feinstein@morganlewis.com<br>*Counsel for Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* | Brian M. Ercole<br>MORGAN, LEWIS & BOCKIUS LLP<br>200 South Bisayne Blvd., Ste. 5300<br>Miami, FL 33131-2339<br>brian.ercole@morganlewis.com<br>*Counsel for Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.* |

47

/s/ Matthew P. Cook
Counsel for Richie Pharmacal Co.